# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**PILGRIM'S PRIDE CORPORATION OF WEST VIRGINIA,**
Employer Below, Petitioner

**v.) No. 25-ICA-218**    (JCN: 2019000818)

**BECKY BELL,**
Claimant Below, Respondent

**FILED**
**October 24, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Pilgrim's Pride Corporation of West Virginia ("Pilgrim's Pride") appeals the April 23, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Becky Bell timely filed a response.[1] Pilgrim's Pride did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted a 13% permanent partial disability ("PPD") award, and instead granting an additional 20% PPD award for a total award of 33% PPD.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Bell was employed by Pilgrim's Pride as a box maker on the day shift. Ms. Bell's job duties involved pulling plastic liners from a roll and using them to line boxes. On June 12, 2018, Ms. Bell felt a pain in her right shoulder while pulling liners off the roll and lining boxes at a fast pace.

On May 30, 2019, the claim administrator issued an order holding the claim compensable for right shoulder strain, right carpal tunnel syndrome, and cervical region radiculopathy.

On July 22, 2020, Joseph Grady, M.D., evaluated Ms. Bell, and considered the compensable conditions of right shoulder strain, right carpal tunnel syndrome, and cervical region radiculopathy. Dr. Grady opined that Ms. Bell had reached maximum medical improvement ("MMI") for right shoulder strain and right carpal tunnel syndrome.

---

[1] Pilgrim's Pride is represented by H. Dill Battle III, Esq. Ms. Bell is represented by Christopher J. Wallace, Esq.

However, Dr. Grady opined that Ms. Bell was not at MMI for cervical radiculopathy, noting that if further treatment was to be performed for the condition, it would be appropriate to delay an impairment rating for the right shoulder and carpal tunnel syndrome since the cervical radiculopathy is a pre-dominant factor. Dr. Grady stated that he would not apportion for any preexisting conditions, and he did not believe Ms. Bell was at MMI.

By order dated September 18, 2020, the claim administrator approved a request for cervical discectomy and fusion at C5-C6 and C6-C7. On September 27, 2021, the claim administrator approved a request for right subacromial decompression, open tenodesis of biceps tendon, and Mumford procedure.[2]

On August 14, 2023, Jennifer Lultschik, M.D., performed an independent medical evaluation ("IME") of Ms. Bell at the request of Pilgrim's Pride. Dr. Lultschik assessed right shoulder strain, right carpal tunnel syndrome, and radiculopathy of the cervical region. Dr. Lultschik opined that the diagnosis of right shoulder strain is causally related to the compensable injury. In contrast, Dr. Lultschik concluded that cervical radiculopathy is causally unrelated to the work injury and is instead due to the compression of spinal nerve roots by facet joint hypertrophy, disc bulges, and other changes of chronic degenerative disease in the cervical spine. Dr. Lultschik also diagnosed chronic sensorimotor axonal polyneuropathy based on the EMG/NCS studies of September 19, 2018, and opined that right carpal tunnel syndrome was unrelated to the work injury. Dr. Lultschik placed Ms. Bell at MMI for the right shoulder strain injury that resulted from the work injury. Additionally, Dr. Lultschik stated that because Ms. Bell had not been in active treatment for more than a year, she was also at MMI for right carpal tunnel syndrome and radiculopathy of the cervical region.

Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*"), and Table 85-20-E, Dr. Lultschik found a total of 25% WPI and recommended 13% impairment for the compensable cervical spine injury and surgery and apportioned 12% impairment to preexisting asymptomatic chronic right C6 nerve root compression. For right shoulder strain, Dr. Lultschik assessed 3% WPI for loss of range of motion and noted that the uninjured left shoulder also had 3% WPI; thus, she subtracted the 3% WPI for the uninjured left shoulder, leaving 0% WPI for the right shoulder strain. For right carpal tunnel syndrome, Dr. Lultschik assessed 0% impairment, and noted that carpal tunnel syndrome is a condition that is correctable without permanent impairment. Dr. Lultschik combined Ms. Bell's impairment from all three compensable diagnoses and recommended 13% WPI for the compensable injury. On October 23, 2023,

---

[2] The shoulder surgery, consisting of biceps tenodesis, distal clavicle resection, and subacromial decompression, was performed on October 15, 2021.

the claim administrator issued an order that granted Ms. Bell a 13% PPD award based on Dr. Lultschik's report. Ms. Bell protested this order to the Board.

On April 24, 2024, Bruce Guberman, M.D., performed an IME of Ms. Bell. Dr. Guberman's impression was chronic posttraumatic strain of the right shoulder with impingement syndrome precipitated and aggravated by the work injury; chronic posttraumatic strain of the cervical spine with aggravation of preexisting but dormant degenerative joint and disc disease due to the work injury; and right carpal tunnel syndrome. Using the *Guides*, Dr. Guberman found that Ms. Bell had 25% impairment for the cervical spine, all of which he attributed to the compensable injury. Dr. Guberman noted that although imaging studies revealed evidence of preexisting degenerative joint disease, Ms. Bell was completely asymptomatic prior to the injury, and there were no restrictions in her activities of daily living.

For the right shoulder, Dr. Guberman assessed 11% WPI, 2% of which he apportioned to preexisting degenerative changes, leaving 9% WPI for the compensable injury. For right carpal tunnel syndrome, Dr. Guberman found 2% WPI. Dr. Guberman combined 25% WPI for the cervical spine with 9% WPI for the right shoulder and 2% WPI for carpal tunnel syndrome, for a total of 33% WPI. Because Ms. Bell had already been awarded 13% PPD, Dr. Guberman recommended an additional 20% PPD award.

In November of 2024, Hicks Manson, M.D., evaluated Ms. Bell at the request of Pilgrim's Pride. Using the *Guides*, Dr. Manson recommended 25% impairment for the cervical spine. Dr. Manson concluded that although cervical radiculopathy was deemed compensable, he believed that there was a significant preexisting component based on Ms. Bell's MRI scan. Dr. Manson apportioned 50% of Ms. Bell's cervical radiculopathy to a preexisting cervical spine pathology and 50% to her compensable work injury and rounded the 12.5% WPI to 13% WPI for the compensable cervical spine injury. Dr. Manson indicated that Dr. Guberman was the outlier who concluded that cervical radiculopathy and carpal tunnel syndrome impairment should be totally attributed to the June 12, 2018, injury. For right carpal tunnel syndrome, Dr. Manson found that Ms. Bell had 4% WPI. However, he did not believe right carpal tunnel syndrome was caused by the compensable injury because Ms. Bell also had left carpal tunnel syndrome. As a result, Dr. Manson apportioned the entirety of the 4% impairment for the preexisting condition. For right shoulder range of motion deficits and distal clavicle extension, Dr. Manson found 11% WPI, of which he apportioned 6% to preexisting acromioclavicular joint arthritis and 5% to the right shoulder strain. Dr. Manson combined the 13% impairment for the cervical spine with 5% impairment for right shoulder strain and recommended 17% WPI.

By order dated April 23, 2025, the Board reversed the claim administrator's order granting a 13% PPD award and instead granted an additional 20% PPD award for a total of 33% PPD based on Dr. Guberman's report. The Board found that Dr. Guberman's report

3

was reliable and persuasive, and that Ms. Bell had 33% whole person impairment for the compensable injury. It is from this order that Pilgrim's Pride now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Pilgrim's Pride argues that the employer met its burden of proving apportionment of preexisting impairment is warranted in this case pursuant to Syllabus Point 6 of *Duff*, 250 W. Va. at 510, 905 S.E.2d at 530. Further, Pilgrim's Pride asserts that Ms. Bell is entitled to a 13% PPD award based on Dr. Lultschik's report. Finally, Pilgrim's Pride avers that Dr. Guberman's recommendation of 20% PPD award and no apportionment is not supported by the reliable evidence of record. We disagree.

In Syllabus Point 6 of *Duff*, 250 W. Va. at 510, 905 S.E.2d at 528, the Supreme Court of Appeals of West Virginia ("SCAWV") held that:

> Under West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This requires the employer to prove that the claimant "has a definitely ascertainable impairment resulting from" a preexisting condition(s). This requires that employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s).

4

Upon review, we conclude that Pilgrim's Pride has not established that the Board was clearly wrong in finding that Ms. Bell has a 33% WPI as a result of the compensable injury. The Board was not clearly wrong when it found that the evidence of record establishes that Ms. Bell's compensable cervical condition was asymptomatic prior to the June 12, 2018, workplace injury, as acknowledged by Drs. Guberman and Lultschik in their respective reports. Pursuant to the SCAWV's holding in *Duff*, it was improper for Drs. Lultschik and Manson to apportion half of Ms. Bell's cervical impairment based solely on diagnostic studies. The Board was not clearly wrong in finding their reports arbitrary and unreliable for this reason. Further, the Board did not err when it found that Dr. Guberman's medical evaluation provides the most reliable opinion regarding Ms. Bell's impairment from the compensable injury.

As the SCAWV has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order granting a 13% PPD award and instead granting an additional 20% PPD award for a total PPD award of 33%.

Accordingly, we affirm the Board's April 23, 2025, order.

Affirmed.


**ISSUED:** October 24, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White